**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INDIANAPOLIS MACK SALES AND SERVICE, INC., Respondent.**

No. 84–3061.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1986.

Decided Sept. 25, 1986.

4. *Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541 (Ind.Sup.Ct.1979).

William Bernstein, N.L.R.B., Washington, D.C., for petitioner.

John J. Myers, Eckert Seamans Cherin & Mellott, Pittsburgh, Pa., for respondent.

Before CUDAHY, COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The primary question we will address in considering this application for enforcement of an order of the National Labor Relations Board ("NLRB" or "Board") is whether the NLRB's determination con-

cerning the appropriateness of the bargaining unit at issue was supported by substantial evidence. For the reasons stated below, we find that it was not and will, therefore, deny the application and remand the action to the Board for further proceedings consistent with this opinion.

## I

Mack Truck, Inc. ("Mack Truck"), a factory branch and district office of the national corporation of the same name, was engaged in the business of selling and servicing Mack trucks in Indianapolis and the surrounding area. The company's workforce was divided into four primary categories: service department employees, parts department employees, office clerical workers, and salesmen. Since 1964, the service and parts departments were maintained as two separate bargaining units and both were represented by the International Association of Machinists and Aerospace Workers, District Lodge No. 90 ("Union") and covered by different collective-bargaining agreements.

In June of 1982, the respondent, Indianapolis Mack Sales and Service, Inc. ("Indianapolis Mack"), entered into an agreement with the parent corporation of Mack Truck to acquire the factory branch and to operate it as an independent dealership. Prior to the effective date of the changeover (August 1982), Mack Truck advised the Union of the sale. The Union then sent a letter to the owner of Indianapolis Mack informing him that it represented the service and parts department employees and requesting that he sign the current collective-bargaining agreements.

Mack Truck closed permanently on Saturday, July 31, 1982. On August 2, Indianapolis Mack opened for business. By a letter mailed on August 3, the Union again informed the owner of Indianapolis Mack that it represented the service and parts departments and requested recognition and bargaining. On August 9, the owner rejected the request on the ground that he had a good-faith doubt regarding the Union's majority support.

The Union filed a charge with the NLRB in which it alleged that Indianapolis Mack, as the successor company to Mack Truck, had engaged in an unfair labor practice in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act ("NLRA" or "Act"), codified as amended at 29 U.S.C. § 158(a)(1) and (5), when it refused to recognize and to bargain with the Union as the duly certified collective bargaining representative of the service department employees of the predecessor company. Indianapolis Mack maintained that it was not the legal successor and, therefore, that it was not required to recognize or bargain with the Union as there was no substantial continuity between its business operations and those of Mack Truck. It also claimed that by the time it had a complete work complement, the employees who were formerly part of the represented service department unit at Mack Truck no longer constituted a majority of the same department in the new company. In addition, Indianapolis Mack denied in its answer to the charge that the bargaining unit was appropriate and refused to enter into a stipulation as to the appropriateness of the unit.

At the subsequent administrative hearing, counsel for Indianapolis Mack stated that there had not been a determination of the appropriateness of the bargaining unit in question. The Administrative Law Judge ("ALJ") concluded—incorrectly—that the appropriateness of the unit was not an issue she could "take cognizance of." Indianapolis Mack again voiced its objection and was assured by the ALJ that the contention had been preserved. No record was made at the hearing on the question of appropriateness. In her order dated May 31, 1983, the ALJ did not analyze in any way the nature of the bargaining unit at issue, but only observed in a footnote that Indianapolis Mack did not "admit the appropriateness of the unit." Although the ALJ had stated at the hearing that she could not reach the question, she nonetheless concluded in her order that, as a matter of law, the "described

unit [of service department employees was] appropriate for the purposes of collective-bargaining." She also found that Indianapolis Mack was the successor of Mack Truck and thus had violated §§ 8(a)(1) and (5) of the Act by refusing to recognize and bargain with the Union as the representative of the described service department bargaining unit.

Indianapolis Mack sought review before the NLRB. It took exception to, among other things, the ALJ's finding of appropriateness and requested that the record be reopened for submission of evidence on that issue. The NLRB (which had delegated its authority to a three-member panel) denied the request, apparently on the ground that Indianapolis Mack had not adequately objected and had failed to introduce evidence on the question at the hearing. In addition, the Board stated that the unit was appropriate "[i]n light of the employees' common work interests and their history of separate representation." The Board adopted the recommended order of the ALJ. One member of the panel, however, dissented on the ground that the record failed to support the finding that the bargaining unit was appropriate. He noted that the Board had long held that automobile service departments should not be fragmented into multiple units. Implicit in his reasoning was the conclusion that only the bargaining history of the predecessor, *not* the common work interest of the employees, was described in the record and that this history, standing alone, should not control the issue of a bargaining unit's appropriateness. This application for enforcement followed.

## II

Section 9(b) of the NLRA, codified as amended at 29 U.S.C. § 159(b), provides in relevant part:

The Board shall decide *in each case* whether, in order to assure employees the fullest freedom in exercising the rights guaranteed by this [Act], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

(emphasis added.)

■ Although the Board exercises broad discretion in determining the appropriateness of a unit, § 9(b) nonetheless imposes a nondelegable obligation on that agency to make such a determination "in each case." Thus, the NLRB fails to perform its statutory duty when it does not exercise its discretion under that section. *See NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); *NLRB v. Cardox Division*, 699 F.2d 148 (3d Cir.1983).

In its brief to this court, the Board acknowledges that an appropriateness determination must be made in a successorship dispute. We, of course, must verify that any determination the Board makes is supported by substantial evidence. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Manley Truck Line, Inc.*, 779 F.2d 1327, 1330 (7th Cir.1985); *Cardox*, 699 F.2d at 156; *NLRB v. Chicago Health & Tennis Clubs, Inc.*, 567 F.2d 331, 334–35 (7th Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). Although this standard of review accords the Board considerable discretion, it does not mean that we will simply rubber-stamp its decisions, thereby substituting judicial abdication for judicial review. *See NLRB v. Harvstone Mfg. Co.*, 785 F.2d 570, 574 (7th Cir.1986). After a thorough review of the evidence presented to the Board, we find in the instant case that the NLRB failed to discharge its obligation under § 9(b).

■ As noted above, the Board is required, with or without arguments from the parties, to determine the appropriateness of a bargaining unit. In addition, there is no question in this case that Indianapolis Mack expressly contested the appropriateness in its pleadings and at the hearing. The ALJ, however, concluded incorrectly at the hearing that the question was not before her and did not allow the introduction of any evidence on the matter. In addition, she expressly assured Indi-

anapolis Mack that it had not waived its objection. Despite these rulings, the ALJ decided in her order that the unit was appropriate. The Board subsequently denied Indianapolis Mack's request to reopen the record, but relying on the *same* record that was before the ALJ concluded that the unit was appropriate, both in view of the "bargaining history" and the "community of interest" of the employees.

■ This is a troubling conclusion from the NLRB for three reasons. First, the Board has a long-standing rule that employees in a dealership's parts and service departments should be in the *same* bargaining unit, *unless* there is an affirmative showing that there is no substantial community of interest between the two groups of employees. *See Jensen's Motorcycle, Inc. d/b/a Honda of San Diego,* 254 N.L.R.B. 1248, 1263 (1981); *see also Gregory Chevrolet,* 258 N.L.R.B. 233, 238 (1981); *Graneto-Datsun,* 203 N.L.R.B. 550, 550 (1973); *Harry Brown Motor Co.,* 86 N.L.R.B. 652, 654 (1949). When an agency changes course, a reviewing court must be satisfied that the agency was aware of, and has given sound reasons for, the change, and that it has shown that the new rule is consistent with the agency's statutory duties. *See New York Council, Association of Civilian Technicians v. FLRA,* 757 F.2d 502, 508 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985). In the instant case, the Board offered no explanation for the refusal to follow its prior rule regarding parts and service department employees, except to note, without elaboration, that *Graneto-Datsun* involved an initial organization. This unadorned conclusion does not explain the Board's decision in this case to view the *Graneto-Datsun* rule as inapplicable in the successorship context. Certainly there is no language in that prior decision that requires, or even suggests, such a limitation. The Board must abide by its own rules. We conclude then that, until the Board expressly modifies or repudiates the rule of *Harry Brown Motor Co.* and its progeny in a reasoned manner consistent with the Act, the agency is bound by it.

■ Second, the Board apparently concluded below, and now argues to this court, that Indianapolis Mack "waived" the objection to appropriateness. This is a disingenuous position. Section 9(b) imposes a nondelegable duty on the Board to determine appropriateness. Thus, the NLRB cannot discharge that obligation by simply finding that the parties did not vigorously pursue the issue. Furthermore, it is unclear to us just how pugnacious the NLRB would require Indianapolis Mack to be. Counsel for the company refused to stipulate to appropriateness and stated emphatically at the hearing that the ALJ should not accept the bargaining unit. Despite the mandate of § 9(b), the ALJ refused to consider the question, but assured Indianapolis Mack nonetheless that its objection had been preserved. Perhaps Indianapolis Mack would have been better advised to have made an offer of proof. Still, we find it unwarranted under the circumstances of this case to require it to have pursued the position with greater tenacity. In view of the ALJ's inaccurate rulings in this case, Indianapolis Mack should not bear the risk of a procedural default, as it was no doubt lulled into acquiescence by the ALJ.

■ Finally, the record simply does not support the NLRB's conclusion regarding community of interest. Of course, the Board may, consistent with its present rule, decide that a specific set of facts requires segregation of the service and parts department employees into two units, and we would uphold its determination on review if it were supported by substantial evidence. *See NLRB v. Lyon & Ryan Ford, Inc.,* 647 F.2d 745, 752 (7th Cir.), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981). In passing on the appropriateness of that segregation of employees, however, the Board, under the precedents discussed above, must consider the interests of the employees of the parts department as well as those of the service department. Otherwise, any statement about the community of interest between the two groups of workers is meaningless. Yet, the ALJ in

this case did not receive any evidence about Indianapolis Mack's parts department that would permit a ruling on the parts department employees. The Board refused to reopen the record, yet somehow was able to rule on the community of interest issue. However, no evidence cannot be substantial evidence. We must, therefore, agree with the dissenting member of the Board that the record does not support the appropriateness determination.

■ The NLRB offers this court several *post hoc* explanations for its decision and that of the ALJ. We first note that these arguments made after the initial decision and in support of the application for enforcement are inherently suspect and do not merit our consideration. *See Metropolitan Life*, 380 U.S. at 443–44, 85 S.Ct. at 1064–65. An administrative agency's decisions, unlike those of a district court, cannot be sustained on a ground appearing in the record to which the agency made no reference; to the contrary, the Board's decision stands or falls on its express findings and reasoning. *See Bowen v. American Hospital Association*, — U.S. —, —, 106 S.Ct. 2101, 2113, 90 L.Ed.2d 584 (1986); *FTC v. Indiana Federation of Dentists*, — U.S. —, —, 106 S.Ct. 2009, 2016, 90 L.Ed.2d 445 (1986); *SEC v. Chenery Corp.*, 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); *Slaughter v. NLRB*, 794 F.2d 120, 122, 128 (3d Cir.1986); *Prill v. NLRB*, 755 F.2d 941, 947–48 (D.C. Cir.1985). One of the fundamental justifications for the administrative process is that an agency possesses an expertise in a particular subject area (here labor relations) that the judiciary, as it is presently structured, cannot acquire at an acceptable cost. That justification comes into play in a particular case only when the agency has in fact applied its expertise. *Brock v. Dow Chemical U.S.A.*, 801 F.2d 926, 931–932 (7th Cir.1986); *see also Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 48–50, 52, 57, 103 S.Ct. 2856, 2869–70, 2871, 2874, 77 L.Ed.2d 443 (1983); *Phelps Dodge Corp. v. NLRB*, 313 U.S.

177, 197, 61 S.Ct. 845, 853–54, 85 L.Ed. 1271 (1941). The incantation of terms of art in the absence of a factual or logical basis (as in the present case) is inadequate to implicate the Board's expertise and undermines the integrity of the administrative process. *Cf. National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1267 (D.C.Cir.1973) ("To merit judicial deference, the [agency's] expertise must operate upon, not seek to replace, record evidence."). The Board's appellate counsel cannot fill in the holes in the agency's decision; stated in another manner, it is the Board's order, not its petition for enforcement, that is the subject of our review. Thus, the *post hoc* arguments come too late.

■ In addition, if we were to consider the Board's arguments, we would find them unpersuasive. First, the Board now in essence asserts that (although its decision referred to both the bargaining history and community of interest) it may rely on the bargaining history alone to find that the unit was appropriate, apparently because that history, without more, is an indicator of a community of interests. We are not persuaded by this argument, which appears to be nothing more than a litigation tactic designed to obscure the lacunae in the record. Ordinarily, bargaining history is but one factor; the community of interests must also be considered. *See Saks & Co. v. NLRB*, 634 F.2d 681, 686 n. 4 (2d Cir.1980); *International Union of Electrical, Radio & Machine Workers*, 604 F.2d 689, 696 (D.C.Cir.1979). A bargaining unit may have been in existence for some time before the change in ownership. However, the issue here is one of successorship, so that the Board must determine whether the unit was appropriate and remains so in the alleged successor. It begs the question to rely on the bargaining history of the predecessor alone, because one must then assume that the duties of the service and parts department employees remained substantially the same under Indianapolis Mack as they were under Mack Truck. Perhaps they did, but the Board

must examine the facts and cannot simply rely on an attenuated inference based on the bargaining history of the predecessor in the absence of the necessary factual predicate.

■ Finally, the Board claims that the finding of substantial continuity between the structure and operation of Mack Truck and Indianapolis Mack satisfies § 9(b). This position suffers from the same bootstrapping character as that examined in the preceding paragraph. The Board, of course, does not suggest that the converse would also be true, *i.e.*, that if continuity is not found, then the unit must be inappropriate. In any event, as we understand the Board's obligations under the NLRA, appropriateness and continuity are to be determined independently. The fact that some of the same evidence may bear on both questions does not mean that the two are continuous. There may have been substantial continuity between the businesses as a whole, but changes made to a specific department may call for a reconsideration of the appropriateness determination. In any event, even if we are wrong in our interpretation of the Act, the paucity of the record with regard to the parts department employees, especially in view of the rule that these workers should ordinarily be in the same unit as service personnel, means that continuity alone is not enough.

## III

For the reasons stated above, the application for enforcement is DENIED and the action is REMANDED to the Board for further proceedings consistent with this opinion.

CUDAHY, *Circuit Judge*, dissenting.

I think Indianapolis Mack's failure to make an offer of proof here as to the appropriateness of the bargaining unit should be of much greater consequence than the majority would grant. The Board found, and its finding is fully supported by the evidence, that Indianapolis Mack was a "successor" to Mack Truck, the former owner. Under these circumstances, there is no automatic presumption that an 18-year-old service department unit should be reexamined or restructured. Whatever may be the presumption in an *initial* certification of parts and service department units, it defies common sense to invoke such a presumption to derail a successful bargaining history of many years standing. *See The Great Atlantic & Pacific Tea Co., Inc.,* 153 NLRB 1549, 1550, 59 LRRM 1679 (1965) (the Board "will not disturb an established bargaining relationship unless required to do so by the dictates of the Act or other compelling circumstances"); *see also Rock-Tenn Co.,* 118 LRRM 1377 (1985); *Crown Zellerbach Corp.,* 102 LRRM 1434 (1979).

The Board in its brief argues that "the record supports the conclusion that the common work interests of the mechanics during their 18 years of separate representation in the bargaining unit were basically unaffected by any changes introduced by the Company following the takeover and their shared community of interests remained intact." Board's Brief at 16. The majority, on the other hand, advances the possibility that the change of ownership may have had a substantial impact on the duties of the service and of the parts departments and on the community of interest existing in them. Had Indianapolis Mack offered to prove facts showing some change affecting the community of interest within the service department, I could readily accept the majority's approach. But there was no offer of proof putting the appropriateness of the bargaining unit in doubt. Under those circumstances, I think the presumption must be that relationships existing before the change of ownership continue in force and the appropriateness of the bargaining unit can be inferred from prior history. Hence, absent any showing of facts pointing in some other direction, the Board did not act arbitrarily in accepting the historical bargaining unit.

I therefore respectfully dissent.