# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2016        Decided February 3, 2017

No. 15-1217

NATIONAL LABOR RELATIONS BOARD,
PETITIONER

v.

TITO CONTRACTORS, INC.,
RESPONDENT

———

Consolidated with 15-1226

———

On Application for Enforcement and Petition
for Review of an Order of the
National Labor Relations Board

———

*Jonathan W. Greenbaum* argued the cause and was on brief for Tito Contractors, Inc.

*Michael Ellement*, Attorney, National Labor Relations Board, argued the cause for the National Labor Relations Board. *Richard Griffin*, *Jr.*, General Counsel, *Jennifer Abruzzo*, Deputy General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Jill A. Griffin*, Supervisory Attorney, were with him on brief.

Before: HENDERSON and ROGERS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* ROGERS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Tito Contractors, Inc. (Tito) is a Washington, D.C.-based general contracting company. As it turns out, that label covers a diverse set of services, ranging from masonry to snow removal and recycling services. This case involves the question of what bargaining unit is appropriate when so varied a workforce seeks union representation. The National Labor Relations Board (NLRB or Board) concluded that Tito's employees should be included in a "wall-to-wall" bargaining unit. We believe that the Board failed to consider evidence pointing to the absence of the required "community of interest" among them. We therefore grant Tito's petition for review, deny the NLRB's application for enforcement and remand to the Board for further proceedings consistent with this opinion.

## I. BACKGROUND

In November 2013, the International Union of Painters and Allied Trades, District Council 51, AFL-CIO (Union) filed a representation petition with the NLRB. The Union sought to represent "[a]ll employees employed by [Tito], excluding all project managers, recycling supervisors, clerical employees, managerial employees, professional employees, guards, and supervisors as defined by the [National Labor Relations] Act" (Act). Joint Appendix (JA) 116. The following month, an NLRB hearing officer (HO) held a hearing on the Union's petition. Tito raised two objections: first, that the proposed

3

bargaining unit was inappropriate because its members did not share a sufficient "community of interest" and, second, certain employees should be excluded from the bargaining unit because they were supervisors within the meaning of the Act. We focus on the first of the challenges. Considering that challenge, the HO advised Tito that a "wall-to-wall unit of all employees employed by the [e]mployer involves a presumption . . . of appropriateness under Board law[.]" *Id.* at 15. She informed Tito that it was therefore "required to present an offer of proof that the unit sought is inappropriate." *Id.* Tito objected to the offer-of-proof procedure, arguing that it instead had the right to present testimony and other evidence on the issue of unit appropriateness.

Notwithstanding its objection, Tito made an offer of proof, describing its business at some length. It divided Tito's operations into two halves: the "labor or contract side of the business" and the recycling side. *Id.* at 23. Tito further divided the labor side into three groups of employees: two mechanics, one warehouse employee and multiple laborers.[1] Regarding the first, Tito explained that it employed two mechanics who worked full-time in its Georgia Avenue office in the District of Columbia (District). The two performed routine maintenance on Tito vehicles but performed no work for Tito customers. Both mechanics "receive[d] benefits and vacation." *Id.* at 20. Second, Tito explained that its one warehouse employee worked full-time in Kensington, MD. There, he coordinated and received deliveries and organized

---

[1] Tito used "laborers" to refer to employees on the labor side of its business. JA 21. It referred to its recycling employees simply as "employees." *Id.* at 23–29. Tito did not identify how many laborers it employed; instead, it noted that it had approximately 57 employees providing recycling services and approximately 100 employees *in toto*, excluding managerial and clerical employees. *See id.* at 19, 23.

the Tito warehouse. He was the only employee there and performed no contracting services. Third, Tito laborers worked in crews, performing a variety of tasks for its customers. Some laborers worked as painters, others as skilled masons and others as tile installers and carpenters. Some crews were assigned to "more permanent contracts[,]" *id.* at 22, of which Tito provided a few examples. For example, four employees worked under Tito's contract with Arlington County, VA. The four reported to Arlington County's maintenance office each morning and complied with the "task orders" they received there. The tasks ranged from repairs to construction to snow removal. Arlington County controlled the Tito laborers' working hours and could request that they be removed from or remain on the job site. In addition, Tito had contracts with Baltimore, MD, and Fairfax County, VA, which contracts set forth specific work hours and standards for how Tito laborers were to complete their work.

Tito also offered proof of the recycling side of its business. It had three separate recycling contracts with Maryland Environmental Services (MES) under which nearly sixty Tito employees worked at several recycling facilities in Maryland. The first contract covered two locations in Montgomery County, MD: a compost facility in Dickerson and a transfer station in Derwood. Tito employees at the Dickerson location performed such tasks as bagging compost, stacking bags, wrapping pallets, monitoring temperatures and groundskeeping. [2] The Derwood employees' duties, in contrast, included traffic control, equipment cleaning, groundskeeping and temperature monitoring. Under this contract, MES exercised considerable control of the Tito employees. For example, MES determined the number of

---

[2] The groundskeeping duties included, among other things, "mowing, weed eating, . . . leaf blower usage, litter control, housekeeping[] [and] painting." JA 25.

employees needed and their hours, established their minimum pay rate, approved or denied overtime and "provide[d] that employees at these two facilities . . . be offered . . . [,] if . . . eligible . . . [,] medical and dental insurance." *Id.* at 25–26.

The second contract covered a different Derwood facility. At this facility, twenty-five Tito employees and one Tito supervisor sorted recyclables on a conveyor belt. They also performed minor custodial duties. Like the first, their contract included a minimum pay rate and provision for medical and dental insurance. In addition, Tito employees generally worked a ten-hour shift each day Monday through Thursday, with a half-hour unpaid lunch break and relief breaks as approved by an MES supervisor.

The third MES contract covered a recycling facility in Cockeysville, MD. The contract required both skilled and unskilled labor, including provision of recycling services. Like the other MES contracts, the Cockeysville contract set a minimum pay rate. Tito employees working in Cockeysville were paid less than their counterparts in Dickerson and Derwood and they were not eligible for benefits.

After Tito completed its offer of proof, the HO went off the record for seven minutes. Once back on the record, she announced that "[a]fter consulting with the [r]egional management, [she] receive[d] [Tito's] officer of proof" but declared that "the evidence proffered [was] rejected" and that she did not intend to "permit testimony on [the bargaining-unit] issue." *Id.* at 29. Tito objected, arguing that section 9 of the Act affords an employer a "hearing on issues subject to the petition." *Id.* The HO noted Tito's objection but instructed it to present its first witness on the supervisor issue only.

During the hearing, two Tito witnesses testified—a Tito general manager and a Tito supervisor—on the supervisor issue. After their testimony concluded, Tito renewed its objection to the offer-of-proof procedure. It argued, in part:

> Section 9(c)(1) of the Act affords the [e]mployer the opportunity to present evidence and witnesses for a full hearing on the representation petition. In this case, the Regional Director[3] took an offer of proof. Within a couple of minutes of providing that offer of proof, the Regional Director made a decision without a transcript and literally within a couple of minutes [made] a determination that the Employer would have to rest on the record on that issue with an offer of proof without the availability of presenting witnesses and evidence.

*Id.* at 108.

Eleven days after the hearing, and after only Tito filed a post-hearing brief, the Board's Acting Regional Director issued a Decision and Direction of Election. In it, he concluded that the HO properly exercised her discretion in following the offer-of-proof procedure. Importantly, he acknowledged that "[t]here [was] no evidence of any interchange between the recycling employees, or between the recycling employees and any other classification of employee." *Id.* at 120. But he also noted that Tito had not proposed an alternative bargaining unit. He then concluded Tito had not overcome the "presumption" that an employer-wide unit was appropriate. Tito thereafter sought

---

[3] The HO clarified that she—not the Regional Director—decided that Tito's offer of proof was insufficient.

Board review. In the meantime, a mail-ballot election was held between February 28, 2014 and March 14, 2014.

On November 17, 2014, the Board rejected Tito's unit-appropriateness petition, stating that "[t]he Employer's Request for Review of the Acting Regional Director's Decision and Direction of Election is denied as it raises no substantial issues warranting review" and that "[t]he Employer's request to reopen the record is denied." *Id.* at 162. The Board also included the following footnote:

> In denying review, we agree with the Acting Regional Director that the Employer has not overcome the presumptive appropriateness of the unit sought by the Petitioner. The petitioned-for employees work for the same employer in facilities located in a common geographical region and perform skilled and unskilled physical work. There is some evidence that the warehouse employee sometimes assists with other Employer projects besides the warehouse and coordinates shipments and deliveries with other employees. Further, there is no evidence of collective bargaining in smaller units and no party seeks to represent any of the employees in a smaller unit. Finally, the Employer has not proposed any alternative units. Member Miscimarra would grant review and evaluate the record evidence regarding the appropriateness of the petitioned-for unit.

*Id.*

Shortly thereafter, the ballots were counted and the Union prevailed. Tito lodged three objections to the election,

including a challenge to the balloting by mail. The Board eventually rejected the objections and certified the Union. Tito refused to bargain with the Union and the Union then filed an unfair labor practice complaint. The Board General Counsel moved to transfer proceedings from the applicable regional director to the Board and also moved for summary judgment. Tito did not respond and the Board granted summary judgment, ordering Tito to bargain with the Union. Tito thereafter filed a petition for review in this Court and the Board cross-applied for enforcement of its order.

## II. ANALYSIS

Section 9(a) of the NLRA provides that a representative selected "by the majority of the employees in a unit appropriate for [collective-bargaining] purposes" is to be the employees' exclusive collective-bargaining representative. 29 U.S.C. § 159(a). The Board "shall decide in each case whether . . . the unit appropriate for the purposes of collective bargaining [is] the employer unit, craft unit, plant unit, or subdivision thereof . . . ." *Id.* § 159(b). Although the Board's discretion to pick a bargaining unit is "broad," *NLRB v. Action Auto., Inc.*, 469 U.S. 490, 494 (1985), it is not unlimited; for example, the Board may not give controlling weight to the extent to which the employees have organized, 29 U.S.C. § 159(c)(5). In deciding what bargaining unit is appropriate, the Board has long presumed that an employer-wide bargaining unit is appropriate, absent a sufficient showing to the contrary. *See, e.g.*, *Greenhorne & O'Mara, Inc.*, 326 N.L.R.B. 514, 516 (1998); *Montgomery Cty. Opportunity Bd.*, 249 N.L.R.B. 880, 881 (1980).

When a labor union files a petition for a representation election, section 9(c) of the Act requires the Board to investigate. 29 U.S.C. § 159(c)(1). If the Board has "reasonable cause to believe that a question of representation

affecting commerce exists," it is to "provide for an appropriate hearing upon due notice." *Id.* At the time of the hearing in this case, regulations provided that all parties must be "afforded full opportunity to present their respective positions and to produce the significant facts in support of their contentions." 29 C.F.R. § 101.20(c) (2014).[4] Additionally, the regulations also make it "the duty of the hearing officer to inquire fully into all matters and issues necessary to obtain a full and complete record upon which the Board or the regional director may discharge their duties under section 9(c) of the Act." 29 C.F.R. § 102.64(b) (2013).[5]

In its petition to this Court, Tito challenges the offer-of-proof procedure used by the HO and endorsed by the Board. It also challenges the Board's ultimate conclusion that an employer-wide bargaining unit is appropriate for Tito's multi-faceted business.

### A. PROCEDURAL OBJECTION

The core of Tito's regulation-based argument is that, by rejecting its offer of proof and approving an employer-wide unit based on a presumption, the HO failed to "inquire fully into all matters and issues necessary to obtain a full and

---

[4] The NLRB eliminated this regulation, effective April 14, 2015. Representation—Case Procedures, 79 Fed. Reg. 74,308, 74,308, 74,384 (Dec. 15, 2014). The revised regulations clarify that many issues, including employees' eligibility to vote, can be deferred until after the election. *Id.*; *see also* 29 C.F.R. §§ 102.64(a)–(b), 102.66(a).

[5] This provision is now qualified by the phrase "[s]ubject to the provisions of § 102.66[.]" Among other things, § 102.66 authorizes an HO to solicit an offer of proof and a regional director to reject the evidence described therein if insufficient to sustain the offeror's position. 29 C.F.R. § 102.66(c).

complete record" and to "afford[] [Tito] full opportunity to present [its] position[] and to produce the significant facts in support" thereof. 29 C.F.R. § 101.20(c) (2014); 29 C.F.R. § 102.64(b) (2013). Nevertheless, both the Board Casehandling Manual and Board precedent confirm that the Board has historically regarded the offer-of-proof approach as sound and "we give controlling weight to the Board's interpretation of its own rule unless it is plainly erroneous or inconsistent with the regulation itself." *Rush Univ. Med. Ctr. v. NLRB*, 833 F.3d 202, 206–07 (D.C. Cir. 2016) (internal quotation marks omitted).

First, the Casehandling Manual provides in pertinent part:

When the hearing officer rejects proffered testimony or refuses to allow a line of testimony, it may be appropriate to suggest that the party adversely affected make an offer of proof. If after reviewing the offer of proof, the hearing officer continues to reject the testimony or line of inquiry, a brief record of the rejected material is present in the record for later review.

The offer, in essence, is a statement that, if the named witness were permitted to testify on the matters excluded, he/she would testify to specified facts. The facts should be set forth in detail; an offer in summary form or consisting of conclusions is insufficient.

An offer of proof may take the form of an oral statement on the record, a written statement to be included in the record (copies and service as with motions, Sec. 11225) or in the unusual situation, with permission of the hearing officer, specific questions of and answers by the

> witness. The latter often lengthens the record unnecessarily and should be avoided.

Nat'l Labor Relations Bd., Casehandling Manual, Pt. 2, Representation Proceedings, § 11226 (Aug. 2007). This provision plainly supports the procedure the HO used here. Elsewhere, the Casehandling Manual provides that, if "the unit sought . . . is presumptively appropriate, then only limited evidence may be allowed where a party *takes a position* as to alternative units." *Id.* § 11217 (emphasis in original). But "such evidence may be precluded in certain circumstances." *Id.* If an employer which, unlike Tito, proposes an alternative unit can present only "limited" evidence, then Tito—which did not "take[] a position" on an alternative unit—should not be heard to complain that it is entitled to more under Board regulations.

The offer-of-proof procedure is also consistent with Board precedent. In *In re Laurel Associates, Inc. d/b/a Jersey Shore Nursing and Rehabilitation Center*, the union sought to represent a presumptively appropriate unit comprising, in effect, all eligible service and maintenance employees. 325 N.L.R.B. 603, 603 (1998). At the hearing, the employer argued that three smaller units were more appropriate and the HO then directed it to make an offer of proof. *Id.* The offer of proof showed that each proposed unit differed in terms of supervision, job functions, wage rates and training requirements. *Id.* It also showed that no interchange existed among the three proposed units. *Id.* The HO rejected the offer of proof and precluded further evidence on the issue, noting that the proposed wall-to-wall unit was presumptively appropriate. *Id.* The regional director and, ultimately, the Board upheld the decision. *Id.* *Laurel Associates*, then, is direct precedent supporting the use of an offer of proof in lieu

of oral testimony if the petitioned-for unit is presumptively appropriate.[6]

Nor are we persuaded by Tito's claim that "[f]ederal courts have . . . held that the Board's refusal to allow an employer to litigate the appropriateness of a bargaining unit constitutes reversible error." Pet'r's Br. 20. Tito's argument rests on three cases—*NLRB v. Indianapolis Mack Sales & Service, Inc.*, 802 F.2d 280 (7th Cir. 1986), *NLRB v. St. Francis Hospital of Lynwood*, 601 F.2d 404 (9th Cir. 1979) and *Ozark Automotive Distributors, Inc. v. NLRB*, 779 F.3d 576 (D.C. Cir. 2015)—each of which is distinguishable.

In *Ozark*, the only one decided by this Court, the employer challenged a union representation election, alleging that union agents interfered with the election. 779 F.3d at 577–78. Before the HO's hearing, the employer served subpoenas *duces tecum* on the union and on an employee who allegedly

---

[6] Tito does not discuss *Laurel Associates*; it instead relies on the NLRB's earlier decision in *Barre-National, Inc.*, 316 N.L.R.B. 877 (1995), which has since been overruled. 79 Fed. Reg. at 74,386; *see NLRB v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 294 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the Board's discretion . . . ."). In *Barre-National*, the union sought to represent a unit of all warehouse and distribution, production and maintenance employees. 316 N.L.R.B. at 877. The employer argued that 24 individuals within the group were supervisors and thus ineligible for inclusion. *Id.* The HO allowed the employer to make only an offer of proof as to the supervisors' status. *Id.* at 878. The Board on review concluded that the hearing had been improperly curtailed, *id.*, stressing that its conclusion was "based on the facts of this case." *Id.* at 878 n.9. The Board order, however, did not explain which facts it regarded as critical to its decision. At a minimum, its focus on supervisory status rather than unit-appropriateness distinguishes it from this case.

acted as its agent. *Id.* at 578. The union and the employee objected, including on attorney-client privilege and work-product grounds. *Id.* The HO did not rule on the subpoenas until the end of the hearing in case the employer could elicit "some of the evidence through testimony[.]" *Id.* (internal quotation marks omitted). At the close of testimony and without conducting an *in camera* review, the HO quashed the subpoenas. *Id.* at 578–79, 581. The employer appealed to the Board; however, the Board adopted her findings and recommendations and certified the union. *Id.* at 579. One Board member dissented because, in his view, the HO improperly focused on the employees' privacy interest to the exclusion of the employer's interests. *Id.* The employer persisted in its refusal to negotiate with the union and the Board upheld the union's subsequent unfair labor practice charge. *Id.* at 579–80. We granted the employer's petition for review, *id.* at 586, concluding that both the HO and the Board failed to balance the employees' interests against the employer's need for the documents, *id.* at 581. We noted that the NLRB Guide for Hearing Officers instructs an HO, if faced with a confidentiality objection, to consider reviewing the subpoenaed documents *in camera* to determine whether the objection can be met by redacting the documents or limiting the subpoena's scope. *Id.* at 582. The HO had done neither. *Id.* Nor was the error harmless because it could have affected the employer's presentation at the hearing. *Id.* at 582, 585–86. *Ozark* is thus easily distinguished: it did not treat the offer-of-proof procedure.

Tito's out-of-circuit caselaw is likewise distinguishable. In *Indianapolis Mack*, the employer contracted with a nationwide business to acquire the latter's subsidiary's Indianapolis factory. 802 F.2d at 282. The employer subsequently refused to negotiate with the union that represented employees in the factory's service and parts

departments and the union's unfair labor practice charge followed. *Id.* At the hearing, the employer challenged the bargaining unit's appropriateness but the administrative law judge (ALJ) declared that the issue was not properly before her. *Id.* In her subsequent decision, however, she concluded that the bargaining unit composed of service department employees only was, as a matter of law, appropriate. *Id.* at 282–83. The Board agreed but the Seventh Circuit denied its enforcement application. *Id.* at 283, 286. The court reasoned that the Board's bargaining-unit determination was improper, in part because the Board made the determination on the basis of the record before the ALJ, who had not permitted unit-appropriateness evidence because she wrongly believed the issue was not before her. *Id.* at 283–84. In our view, Tito's reliance on *Indianapolis Mack Sales & Service* might be well-placed but for one critical difference—Tito's offer of proof. The employer in *Indianapolis Mack* made no offer of proof. *Id.* at 286 (Cudahy, J., dissenting). Because Tito's offer of proof did address—however summarily—the appropriateness of the wall-to-wall unit, *Indianapolis Mack* is of scant support to Tito.

In *St. Francis Hospital*, the union petitioned to represent the hospital's registered nurses. 601 F.2d at 407. The hospital argued that the bargaining unit should include *all* professional employees and sought to present supporting testimony and other evidence. *Id.* The HO did not admit the evidence, relying on NLRB precedent holding that registered nurses, if they desired, were entitled to their own bargaining unit. *Id.* Although the hospital made an offer of proof before the HO, the reviewing regional director subsequently concluded that registered nurses comprised an appropriate unit and the Board agreed. *Id.* The Ninth Circuit, however, concluded that the Board improperly relied on a *per se* rule of bargaining-unit appropriateness. *Id.* at 413–16. Unlike in *St.*

*Francis Hospital*, the HO here (presumably) evaluated Tito's offer of proof when she went off the record for seven minutes.

Tito's final argument is that the offer-of-proof procedure runs afoul of the text of two statutory provisions. Tito first argues the Act requires the Board to "decide *in each case . . .* the unit appropriate for the purposes of collective bargaining," 29 U.S.C. § 159(b) (emphasis added). The HO, regional director and Board *did* consider case-specific facts in deciding—rightly or wrongly—that the wall-to-wall bargaining unit was appropriate.

Tito's second statutory argument posits that the decision does not comply with section 9(c)(5)'s command that, "[i]n determining whether a unit is appropriate . . . [,] the extent to which the employees have organized shall not be controlling." *Id.* § 159(c)(5). As we have explained, the Board's unit-appropriateness presumptions give "the [u]nion an initial advantage" but "[t]his modest benefit . . . hardly grants 'controlling' weight to the extent the [u]nion ha[d] organized the employees." *Sundor Brands, Inc. v. NLRB*, 168 F.3d 515, 519 (D.C. Cir. 1999). Similarly, presuming a wall-to-wall bargaining unit's appropriateness is not synonymous with granting controlling weight to a union's organizing effort.

## B. APPROPRIATENESS OF WALL-TO-WALL BARGAINING UNIT

Tito's substantive challenge to the appropriateness of the wall-to-ball bargaining unit has more "substance." In our view, the Board did not adequately consider the ample evidence manifesting that Tito's employees lacked a community of interest.

We start with the principle that the Board's decision as to the appropriate bargaining unit "is entitled to wide deference."

*United Food & Commercial Workers, AFL-CIO v. NLRB*, 519 F.3d 490, 494 (D.C. Cir. 2008) (internal quotation marks omitted). "In determining whether a unit is appropriate, the Board focuses on whether the employees share a community of interest." *Id.* (internal quotation marks omitted). "The Board considers 'a variety of factors, including the employees' wages, hours and other working conditions; commonality of supervision; degree of skill and common functions; frequency of contact and interchange with other employees; and functional integration.'" *Id.* (quoting *Sundor Brands*, 168 F.3d at 518). Nevertheless, we have granted a petition for review if the NLRB's "bargaining unit determination . . . is arbitrary or not supported by substantial evidence in the record." *Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 420 (D.C. Cir. 2008) (internal quotation marks omitted). "[W]e may not find substantial evidence 'merely on the basis of evidence which in and of itself justified [the Board's decision], without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955, 962 (D.C. Cir. 2003) (second alteration in original) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). "[T]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 961–62 (internal quotation marks omitted) (quoting *Universal Camera Corp.*, 340 U.S. at 488).

In our view, the Board order is not supported by substantial evidence. The Board does not discuss the portions of Tito's offer of proof which plainly showed no community of interest. Tito's offer of proof contains at least three types of evidence contradicting the Board's conclusion. First, the Board fails to recognize the unchallenged assertion that Tito's business comprised two discrete halves—a labor side and a recycling services side. As Tito explained, its laborers' tasks

included such varied duties as painting, tile installation and snow removal. Most of its employees on the labor side of the business performed work exclusively for Tito. In contrast, all of Tito's recycling employees worked on site at Maryland recycling facilities where they did not "perform labor work," JA 24, but instead bagged compost and sorted recyclables. These employees worked in different locations several miles apart and the recycler, MES, exercised considerable control over their working conditions. The Board minimizes these plain—and specific—differences with its generic observation that "[t]he petitioned-for employees work for the same employer in facilities located in a common geographical region and perform skilled and unskilled physical work." *Id.* at 162 n.1. But how does the Board's hyper-generalized description of Tito's employees' responsibilities reflect a community of interest? The Board offers only silence.

Second, the Board also fails to consider the lack of interchange among the different types of Tito employees. Significantly, the Acting Regional Director himself noted that "[t]here [was] *no evidence of any interchange* between the recycling employees, or between the recycling employees and any other classification of employee." *Id.* at 120 (emphasis added). For example, on Tito's recycling side, the Cockeysville facility is approximately sixty miles from the Derwood facility, meaning that its employees could not easily move between the two if one facility was short-staffed. This distance alone belies the existence of meaningful interchange between the recycling employees and Tito's labor-side employees. Indeed, the distances among Tito's various worksites were cited as a reason to conduct a mail-ballot election. *Id.* at 170. And yet, the Board ignored that employee interchange was lacking. Instead, it summarily concluded that the employees worked "in facilities located in a common geographical region" and that there was "some

evidence that the warehouse employee sometimes assists with other [e]mployer projects . . . and coordinates shipments and deliveries with other employees." *Id.* at 162 n.1. The Board did not explain how these isolated facts, even if true, supersede the lack of evidence that interchange exists among Tito's two mechanics, one warehouseman and its many laborers (who themselves are separated).

Third, the Board overlooks the significant differences among Tito's employees' "wages, hours and other working conditions." *United Food & Commercial Workers*, 519 F.3d at 494. Tito's Cockeysville employees receive no fringe benefits and are paid less than the Dickerson and Derwood employees to whom both medical and dental insurance is available. Moreover, the three MES contracts set minimum pay rates for Tito's recycling employees. These important differences tend to undermine the conclusion that Tito's employees share a community of interest. Because the Board failed to take this evidence into account, its conclusion is not supported by substantial evidence. *Lakeland Bus Lines*, 347 F.3d at 961–62.

For the foregoing reasons, we grant Tito's petition for review, deny the Board's application for enforcement and remand to the Board for further proceedings consistent with this opinion.

*So ordered.*

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring: I write separately to give a word to the wise: although the Board's order, composed of two sentences of text and a footnote analysis of the unit-appropriateness issue (which analysis also acknowledges its dissenting colleague's view) is apparently standard operating procedure at this stage, the Board will continue to run the risk of a court-imposed re-do if it persists—especially when, en route to the Board's review, the HO, *inter alia*, likewise fails to consider adequately the offered proof. It might be better served by rethinking its drumhead procedure.

ROGERS, *Circuit Judge*, concurring: I concur in granting the petition for review, and denying the Board's cross-application for enforcement of its Order. With respect to the challenge to the Board's finding of the appropriateness of the company-wide bargaining unit, Op. Part II.B, I concur for the following reasons. The Board's decision failed to come to grips with record evidence offered by the petitioner that potentially detracts from the conclusion that the company-wide bargaining unit sought by the Union was appropriate. *See Tito Contractors, Inc. v. Int'l Union of Painters & Allied Trades, Dist. Council 51 (AFL-CIO)*, NLRB Case 05-RC-117169 at 1 n.1 (Nov. 17, 2014) ("2014 Decision"). As the court recounts, the evidence suggested that the petitioner's business was divided into two halves, where working conditions varied between and within the two halves. *See* Op. 16-18. The Board's finding is therefore unsupported by substantial evidence in the record as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491 (1951); 29 U.S.C. § 160(e).

Of course, in determining whether employees share a "community of interests" making a bargaining unit appropriate, *RC Aluminum Industries, Inc. v. NLRB*, 326 F.3d 235, 239 (D.C. Cir. 2003), the Board considers a "host of factors" and "no particular factor controls," *id.* at 240. But the challenged decision makes it difficult to discern the Board's rationale for concluding that the petitioner failed to overcome the presumptive appropriateness of the company-wide bargaining unit. *See NBCUniversal Media, LLC v. NLRB*, 815 F.3d 821, 829 (D.C. Cir. 2016). The Board makes conclusory findings, such as that employees work in a "common geographical region and perform skilled and unskilled physical work." 2014 Decision at 1 n.1. It also fails to explain why the few facts on which it relies, such as "some evidence" that a single employee "sometimes assists" others, *id.*, should take precedence over other record evidence that appears to detract from the Board's conclusion, *see* Op. 16-18.

2

On remand, the Board will have the opportunity to address fully the evidence offered by the petitioner regarding the structure and operation of its business that potentially detracts from the Board's broadly stated conclusion on appropriateness. *See Sundor Brands, Inc. v. NLRB*, 168 F.3d 515, 519 (D.C. Cir. 1999); Op. at 16-18.  Accordingly, I "express no opinion upon the question whether the factors for which there is support in the record could suffice by themselves to support the Board's present unit determination." *Sundor Brands, Inc.*, 168 F.3d at 520.  *But see* Op. at 16.  It remains open to the Board to reach the same conclusion about the appropriateness of a company-wide bargaining unit upon providing a reasoned explanation that "take[s] into account whatever in the record fairly detracts from its weight." *Universal Camera Corp.,* 340 U.S. at 488; *see NLRB v. Sw. Reg'l Council of Carpenters*, 826 F.3d 460, 465-66 (D.C. Cir. 2016).  There is no occasion to comment further, as "clarity" in explication of its opinion, not particular formatting, is what is asked of the Board.  *Shepard v. NLRB*, 459 U.S. 344, 350 (1983) (quoting *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197 (1941)).  *But see* Concurring Op. (Henderson, J.).