# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 23, 2008          Decided March 14, 2008

No. 06-1358

UNITED FOOD AND COMMERCIAL WORKERS, AFL-CIO,
LOCAL 540,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
07-1060 and 07-1087

———

On Petitions for Review and Cross-Application for
Enforcement of an Order of the
National Labor Relations Board

———

*George Wiszynski* argued the cause and filed the briefs for petitioner United Food and Commercial Workers, AFL-CIO.

*Steven D. Wheeless* argued the cause for petitioner Wal-Mart Stores, Inc. With him on the briefs was *Bennett Evan Cooper*.

*Philip A. Hostak*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Assistant General Counsel, and *Robert J. Englehart*, Supervisory Attorney. *David S. Habenstreit*, Attorney, entered an appearance.

Before: TATEL, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This case illustrates some of the collective bargaining complications that ensue when technological developments diminish the need for skilled manual labor. Workers in the meat department at the Wal-Mart in Jacksonville, Texas, elected Local 540 as their bargaining representative. At the time, those workers used specialized meat-cutting skills. Wal-Mart later announced its intention to convert meat departments around the country from selling meat that was cut on site to selling pre-packaged meat. In the wake of the announcement, the Jacksonville Wal-Mart changed its meat department so that it sells only pre-packaged meat. Because the Jacksonville meat-department workers no longer use specialized cutting skills, the NLRB found that the meat department had become an inappropriate bargaining unit. As a result, the Board concluded that Wal-Mart has no general duty to bargain with the Union representing the meat-department employees. But according to the Board, Wal-Mart nonetheless must bargain with the Union over the *effects* of the conversion on the Jacksonville meat-department employees.

Both the Union and Wal-Mart have petitioned for review in this Court. The Union argues that the meat-department bargaining unit remains appropriate after conversion of the department to selling pre-packaged meat. Wal-Mart contends that it does not have to bargain with the Union over the effects of the conversion. We conclude that the Board's decisions on both issues were reasonable in light of Board precedents. We therefore deny the petitions for review and grant the Board's cross-petition for enforcement.

I

In late 1999, the United Food and Commercial Workers Union, Local 540, sought to represent meat-department employees at Wal-Mart's Jacksonville, Texas, store. In January 2000, the Board concluded that the 10 meat-department employees at the Jacksonville store constituted an appropriate bargaining unit. In February 2000, the employees elected the Union as their bargaining representative.[1]

At the time of the union election in February 2000, the meat department at the Jacksonville store ran a "boxed-meat" operation. The store received large cuts of meat, and meat-department employees used specialized cutting skills to prepare the meat for sale to Wal-Mart customers.

In late February 2000, shortly after the union election, Wal-Mart announced its intention to convert meat-department operations at many stores throughout the United States. The goal of the announced conversion was to implement a pre-

---

[1] The Board expressly affirmed and adopted many of the rulings, findings, and conclusions of the administrative law judge. Where appropriate, we therefore cite the administrative law judge's decision.

packaged-meat operation. Meat-department employees would no longer cut or even label the meat; instead, stores would receive pre-packaged meat ready for display and sale.

After the Wal-Mart announcement, the Jacksonville store began to convert its meat department to pre-packaged meat. On July 15, 2000, the Jacksonville Wal-Mart completed the change.

At the same time that the Jacksonville meat department was converting its operations, Wal-Mart was pursuing objections to the union election in proceedings before the Board. In addition, from March through August of 2000, Wal-Mart and the Union had a series of unsuccessful exchanges over collective bargaining. Wal-Mart repeatedly refused to engage in collective bargaining with the Union until its objections to the union election were resolved. In March, the Union sent a letter to Wal-Mart demanding collective bargaining. Wal-Mart denied the request, citing its pending objections to the union election. In June and July, the Union sent further requests for bargaining, but Wal-Mart continued to reject them.

On August 9, the Board rejected Wal-Mart's objections to the union election and certified the Union as the meat-department employees' bargaining representative. By this time, Wal-Mart had already converted the meat department. So on August 16, when the Union again requested bargaining with Wal-Mart, Wal-Mart again refused, this time on the ground that the meat-department bargaining unit was no longer appropriate.

The Board's General Counsel then issued a complaint alleging that Wal-Mart committed an unfair labor practice by refusing to bargain with the Union. After initial proceedings

before an administrative law judge, the Board concluded that the meat-department unit had become inappropriate by July 15, 2000 – the date the Jacksonville store completed the conversion – and that Wal-Mart therefore has no duty to bargain with the Union over an employment contract. But the Board concluded that Wal-Mart must bargain over the *effects* of the conversion and had committed an unfair labor practice by refusing the Union's request to do so. *See* 348 N.L.R.B. No. 16, at 1-2 (2006). The Board therefore issued an order requiring Wal-Mart to bargain with the Union regarding the effects of the conversion and to supply the Union with relevant information. *See id.* at 2.

Both the Union and Wal-Mart have petitioned for review in this Court. The Union contends that the Jacksonville meat-department unit is still appropriate, and Wal-Mart argues that it has no duty to bargain with the Union over the effects of the change in the Jacksonville meat-department operations. We examine the Board's decisions to ensure that they are rational, consistent with the National Labor Relations Act, and supported by substantial evidence. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 361 (1998).

II

The Union argues that the bargaining unit of meat-department employees remains appropriate despite Wal-Mart's conversion to a pre-packaged-meat operation.

In determining whether a unit is appropriate, the Board focuses on whether the employees share a "community of interest." *RC Aluminum Indus., Inc. v. NLRB*, 326 F.3d 235, 239-40 (D.C. Cir. 2003) (internal quotation marks omitted). The Board considers "a variety of factors, including the employees' wages, hours and other working conditions;

commonality of supervision; degree of skill and common functions; frequency of contact and interchange with other employees; and functional integration." *Sundor Brands, Inc. v. NLRB*, 168 F.3d 515, 518 (D.C. Cir. 1999) (internal quotation marks omitted). Because the assessment requires a fact-intensive inquiry and a balancing of various factors, the Board has broad discretion in making the determination; we have said its decision is entitled to "wide deference." *Id.* (internal quotation marks omitted); *see also RC Aluminum Indus.*, 326 F.3d at 240.

The Board historically treated meat-department units as presumptively appropriate. *See, e.g.*, *Big Y Foods, Inc.*, 238 N.L.R.B. 855, 856 (1978); *R-N Market, Inc.*, 190 N.L.R.B. 292, 292 & n.2 (1971). Meat-department employees traditionally worked on large animal carcasses, and their jobs required specialized meat-cutting skills and expertise. Over time, meat-department employees began to work with boxed meat, which consists of portions of carcasses that the store receives and that meat-department employees then cut and package for sale. *See Scolari's Warehouse Mkt. Stores, Inc.*, 319 N.L.R.B. 153, 155 (1995). In recent years, however, pre-packaged meat has become much more common; stores receive the meat already prepared for sale, and employees no longer need or use meat-cutting skills.

As the industry has evolved, the Board has abandoned the presumption of appropriateness for meat-department units. Instead, the Board applies its ordinary community-of-interest test. Applying that test, the Board has made clear that use of specialized meat-cutting skills by meat-department employees is central to the appropriateness of a meat-department unit. *See Wal-Mart Stores, Inc.*, 328 N.L.R.B. 904 (1999); *Scolari's Warehouse*, 319 N.L.R.B. 153. Indeed, it is "difficult to find a precedent in which the Board found a meat

department unit appropriate when no meat cutting took place there." *Wal-Mart Stores, Inc.*, 348 N.L.R.B. No. 16, at 23 (2006).

The evolution of Wal-Mart's Jacksonville meat department has mirrored the general trend in the industry. Before 2000, the Jacksonville meat-department employees used specialized and distinctive cutting skills and spent about 85 percent of their time handling and cutting boxed meat. In January 2000, the Board's Regional Director therefore found that the meat-department employees shared a community of interest separate from other store employees and constituted an appropriate bargaining unit.

The Jacksonville Wal-Mart's July 2000 conversion to a pre-packaged-meat operation eliminated the need for meat-department employees to exercise any meat-cutting skills – or, indeed, to cut any meat at all. Instead of using "highly specialized meatcutting skills on a routine and constant basis," the employees now receive small, pre-wrapped meat packages and place them on the proper shelves. *Wal-Mart Stores, Inc.*, Decision and Direction of Election (Case 16-RC-10168) at 11 (2000), Joint Appendix ("J.A.") 207. "In essence, the Jacksonville store's meat department employees now do stocking." *Wal-Mart Stores, Inc.*, 348 N.L.R.B. No. 16, at 23.

Because the Jacksonville meat-department employees no longer engage in specialized meat-cutting, the Board concluded that the meat-department bargaining unit no longer is appropriate. *See id.* at 22-23. In light of the facts and the Board's precedents on meat-department employees, we think the Board's decision was entirely reasonable and find no basis to disturb it.

The Union emphatically argues that the meat-department unit nonetheless remains appropriate because (1) under Wal-Mart's corporate structure, the meat department is still separate from the general-merchandise division; (2) meat-department employees continue to spend most of their work time in the meat department selling meat, which employees from other departments do not sell; (3) no employee lost pay as a result of the conversion; and (4) no employee was transferred out of the meat department. But the Board found that, in the absence of specialized meat-cutting skills, those factors were insufficient to establish a separate community of interest for meat-department employees. We cannot say the Board's analysis was unreasonable: It is surely appropriate for the Board to take account of the technological changes that make specialized skills unnecessary and thereby render inappropriate a bargaining unit that is premised on employees' possessing those skills.

Apart from the merits, the Union also raises a procedural point, but it requires little discussion. The Union argues that Wal-Mart may not re-litigate the appropriateness of the bargaining unit in the unfair labor practice proceeding, absent changed or special circumstances. The Board reasonably found, however, that the conversion of the meat department constituted changed or special circumstances, thereby allowing Wal-Mart to contest the unit determination in the unfair labor practice proceeding. *See Wal-Mart Stores, Inc.*, 348 N.L.R.B. No. 16, at 21-23; *see also Frito-Lay, Inc.*, 177 N.L.R.B. 820, 821 (1969); *Super K-Mart*, 322 N.L.R.B. 583, 583 n.3 (1996).

In sum, the Board carefully followed its meat-department precedents and reasonably determined that the Jacksonville meat-department unit no longer is appropriate because the employees no longer use specialized meat-cutting skills. The

Union's various arguments to the contrary are unavailing. We therefore deny the Union's petition for review.

## III

We turn now to Wal-Mart's petition. Wal-Mart challenges the Board's requiring it to bargain with the Union over the *effects* of the conversion on the meat-department employees. As we have broken down the component parts of Wal-Mart's argument, we discern four questions:

*First*, does Wal-Mart have a duty to engage in effects bargaining with respect to the conversion of the meat department? The Board said yes. Under Board precedent, when a plant closes, the employer has a duty to bargain over the effects of the closing. *See First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 681-82 (1981). The Board found that Wal-Mart's conversion to a pre-packaged-meat operation was analogous to a plant closing because the conversion, like a plant closing, eliminated the bargaining unit. The Board therefore concluded that Wal-Mart must bargain with the Union over the effects of the conversion. Notwithstanding Wal-Mart's various attempts to distinguish those plant-closing precedents, the Board quite reasonably relied on them in this conversion case.

*Second*, does Wal-Mart's duty to engage in effects bargaining continue even after the meat department's conversion rendered the bargaining unit inappropriate? The Board again said yes, relying again on the analogy to the plant-closing cases. An employer's duty to bargain over the effects of a plant closing continues even after the closing: As the Board indicated, when a plant closes, an employer cannot escape its effects bargaining duty simply by saying "No one works here anymore; the bargaining unit has disappeared."

348 N.L.R.B. No. 16, at 20 (2006); *see also First Nat'l Maint. Corp. v. NLRB*, 452 U.S. at 681-82; *Freedman Die Cutters, Inc.*, 340 N.L.R.B. 422, 423 (2003); *West Coast Sch.*, 208 N.L.R.B. 725, 725-27 (1974). The Board therefore reasonably relied on the plant-closing precedents to find that the conversion did not extinguish Wal-Mart's duty to bargain over the effects of the conversion.

*Third*, does Wal-Mart's duty to engage in effects bargaining apply even if the Union did not demand effects bargaining before the July 15, 2000, conversion of the meat department? The problem for Wal-Mart is that the factual premise is incorrect: The Union first demanded effects bargaining back in March 2000 after it learned of the conversion plan, well before the actual July 15 conversion. It repeated that demand several times; each time, Wal-Mart refused to bargain. Because the Union requested effects bargaining beginning in March 2000, we need not consider how this case would come out if the Union had not demanded effects bargaining before July 15, 2000; Board counsel candidly acknowledged the difficulty of that question. *See* Tr. of Oral Arg. at 18 ("That would present a much more difficult case . . . .").[2]

*Fourth*, does Wal-Mart's duty to engage in effects bargaining apply given that the Union was only elected, and not yet certified, before the July 2000 conversion that rendered the meat-department unit inappropriate? The Board said yes: Under its relation-back precedents, the Board

---

[2] Contrary to Wal-Mart's suggestion, moreover, it had adequate notice in the Board proceedings of the temporal scope of the effects bargaining charge. *See* Complaint at 4-5, J.A. 163-64; Joint Exhibit 1 (March 2000 Union Letter), J.A. 399; *cf. United Packinghouse, Food & Allied Workers Int'l Union, AFL-CIO v. NLRB*, 416 F.2d 1126, 1134 n.12 (D.C. Cir. 1969).

ordinarily considers a union the elected representative of a bargaining unit as of the date of its election, not the date of its certification.  If the Board "rejects the employer's objections and certifies the union, the employer's duty to bargain relates back to the date of the election . . . ."  *Mission Foods*, 350 N.L.R.B. No. 36, at 11 (2007).  An employer therefore can commit an unfair labor practice by ignoring lawful bargaining demands during the period between election and certification.  *See, e.g.*, *Timsco Inc. v. NLRB*, 819 F.2d 1173, 1180 (D.C. Cir. 1987) (noting the "existence of extensive Board precedent suggesting that the duty to bargain often runs from the date of election rather than certification"); *Dow Chem. Co. v. NLRB*, 660 F.2d 637, 654 (5th Cir. 1981); *Mike O'Connor Chevrolet-Buick-GMC Co.*, 209 N.L.R.B. 701, 703 (1974).  Here, the Board reasonably applied its relation-back doctrine and did not carve out an exception for cases in which a union becomes inappropriate at some point between election and certification.  The Board therefore reasonably found that the Union was protected against certain unfair labor practices – such as Wal-Mart's refusal to engage in effects bargaining – from the time of the February 2000 election.

In sum, the Board reasonably applied its precedents in finding that Wal-Mart committed an unfair labor practice by failing to engage in effects bargaining with the Union.  We therefore deny Wal-Mart's petition for review.[3]

---

[3] Wal-Mart also argues that the Union election was invalid because Union officials allegedly gave an illegal gratuity to an employee.  The Board reasonably rejected this argument, and we need not discuss it further.

12

\* \* \*

We deny the petitions for review and grant the Board's cross-petition for enforcement.

*So ordered.*