**WILLAMETTE INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 97–1375.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1998.

Decided June 9, 1998.

Rehearing Denied Aug. 26, 1998.

William H. Walters argued the cause for petitioner, with whom Louis B. Livingston was on the briefs.

Fred B. Jacob, Attorney, National Labor Relations Board, argued the cause for respondent, with whom Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and David Habenstreit, Supervisory Attorney, were on the brief.

Lester V. Smith, Jr. was on the brief for amicus curiae Timber Operators Council.

Harlan Bernstein was on the brief for amicus curiae Western Council of Industrial Workers.

Before: SILBERMAN and GINSBURG, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

SILBERMAN, Circuit Judge:

Petitioner Willamette Industries contends that the National Labor Relations Board failed to adequately explain why certification of a maintenance-only bargaining unit was appropriate, in light of the Board's previous practice and its prior precedent. We grant the petition for review, and deny the Board's cross-petition for enforcement.

## I.

At its Albany, Oregon facility, Willamette Industries manufactures particleboard from wood by-products. Production employees work on the "line" turning raw materials into finished product, and maintenance workers are responsible for keeping the line running smoothly. Production and maintenance employees are included in the same collective bargaining unit at all 21 of Willamette's organized lumber industry plants, three of which are particleboard facilities. Local 280 of the International Brotherhood of Industrial Workers, however, petitioned for an election only among the 40 maintenance employees of the approximately 200 production and maintenance workers at the Albany plant. The Regional Director (Acting), after a contested hearing, directed an election in the unit sought by Local 280, which the Union won 29–11. Petitioner refused to bargain with what it contended was an inappropriate unit in the lumber industry. In the ensuing unfair labor practice proceeding, the Board agreed with the Regional Director's unit determination.

## II.

We grant wide deference to the Board's unit determinations, mindful as we are, that the Board is not obliged to select

the most appropriate unit but only an appropriate unit. *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610, 111 S.Ct. 1539, 1542, 113 L.Ed.2d 675 (1991); *Local 627, Int'l Union of Operating Eng'rs v. NLRB*, 595 F.2d 844, 848 (D.C.Cir.1979). Many representation cases, moreover, turn on disputed questions of fact. Accordingly, we often reject challenges to Board unit determinations summarily, occasionally raising a judicial eyebrow that a petitioner would even bring the case to us. This is not such a case.

Petitioner argues that for a very long time the Board has certified only "wall-to-wall" units in the lumber industry. The Regional Director and the Board, it is asserted, have reversed course in this proceeding without an explanation, indeed without even acknowledging that a policy change was effected. In order to understand petitioner's position, which is supported by *amici* Timber Operators Council and the Western Council of Industrial Workers (the Union that represents employees in many lumber industry "wall-to-wall" units), it is necessary to review Board precedent going back almost 50 years. For a time, the Board flatly barred separate "craft" or special department representation in the lumber industry. *See Weyerhaeuser Timber Co.*, 87 N.L.R.B. 1076, 1082 (1949). That *per se* rule was adopted "[i]n view of the comprehensive and consistent history of industrial bargaining, the extensive integration of all production and maintenance work, and the fact that the industry ha[d] tended to develop specialists rather than workmen in the craft tradition." *Id.* In 1966, the Board abandoned *Weyerhaeuser*'s categorical approach, along with similar rules operating in other industries, in its *Mallinckrodt Chemical Works* decision. 162 N.L.R.B. 387, 398 n. 17 (1966). But, the next year, in *Timber Products Co.*, 164 N.L.R.B. 1060 (1967), the Board made clear that it would still look unfavorably on

separate maintenance units in the lumber industry. In that case, a unit of maintenance electricians was rejected partly because of the "integrated aspects of [the] employer's operation" and partly because "the pattern of bargaining in [the lumber] industry ha[d] been almost exclusively on an industrial rather than craft basis, and that such bargaining ha[d] been conducive to a substantial degree of stability in labor relations." *Id.* at 1063.[1] Similar results (and reasoning) followed in *Potlatch Forests, Inc.*, 165 N.L.R.B. 1065 (1967), and *U.S. Plywood Champion Papers, Inc.*, 174 N.L.R.B. 292 (1969). Member Fanning, dissenting in *U.S. Plywood*, 174 N.L.R.B. at 297, as he had in *Timber Products*, accused the Board of virtually having resurrected the *Weyerhaeuser per se* rule.

That is how Board law stood prior to this case. And we are told that industry practice conforms to this "wall-to-wall" pattern. The Regional Director's decision nevertheless broke from this pattern. He found that the Albany plant's maintenance employees had a separate "community of interest" because they had their own supervision, had a common function, were more highly-skilled than production workers, were on a higher wage scale, and did not regularly perform any production work. He dismissed the prior Board lumber cases as distinguishable on their "facts." He did not even mention the operations integration point that the Board cases had emphasized,[2] and as to what Member Fanning had observed was the all important factor—the history of wall-to-wall bargaining units in the industry—the Regional Director had this to say:

> The Employer offered evidence that at others of its plants, and in the lumber industry in general, production and maintenance units are the rule. However, there is no evidence that establishment of a maintenance-only unit at the Albany

---

1. The Board also thought the electrical workers were more specialists than true craftsmen, but Member Fanning, who dissented, thought the Board's decision was really driven by the lumber industry's bargaining history. *Timber Products*, 164 N.L.R.B. at 1067.

2. Board's counsel argued that although the Regional Director did not explicitly consider the Board's "integrated operations" factor, his determination that the maintenance employees' job

functions substantially differed from the production employees' tasks was the equivalent. But in the Board's prior cases, the integrated operations factor looked to "the extent to which the continued normal operation of the production process is dependent upon the performance of the assigned functions of the employees in the proposed unit." *Mallinckrodt*, 162 N.L.R.B. at 397 (cited in *Timber Products* and *Potlatch Forest* for the proposition that integrated operations is relevant to lumber industry unit determinations).

plant would have any disruptive effect on labor relations at the Employer's other plants or otherwise in the industry.

The Board, in its answer to Willamette's challenge to the unit determination in the unfair labor practice proceeding, agreed with the Regional Director that its prior cases were distinguishable because they involved a greater degree of integration and interchange of job functions between maintenance and production employees. The Board also appeared to endorse the Regional Director's treatment of the industry bargaining pattern, interpreting one of its prior lumber cases as not relying so heavily on this factor. It said that while "the Board in *U.S. Plywood* ultimately determined that the petitioned-for maintenance department unit in that case was inappropriate, it did so primarily on the ground that the subject maintenance employees were not a distinct and homogeneous group, not on the basis of industry bargaining pattern and stability." *Willamette Indus.*, 323 N.L.R.B. No. 137, (1997).

■ We do not think the Regional Director and Board's decision meets the reasoned decisionmaking standard of the APA. To be sure, Board precedent permitted a distinction to be drawn, as it always does in such cases, between the factors that point to a separate or common community of interest between maintenance and production workers—although, as we noted, neither the Regional Director nor the Board explicitly addressed the integration of operations factor. But there simply is no denying that in the lumber industry the standard wall-to-wall practice had always been given significant, if not dominant, influence on unit determinations. The Regional Director, while ostensibly addressing that factor, turned it inside out by asserting blithely that there was "no evidence" that establishing a maintenance-only unit in the Albany plan would have a "disruptive effect on labor relations at the Employer's other plants" (or otherwise within the industry). The Board in evaluating this factor in the past had always pointed to the positive evidence of labor stability as connected to the historical wall-to-wall bargaining units. It had never asked whether a deviation would cause *instability*. It is doubtful whether such speculative evidence could be produced, but, in any event, changing the focus in that way is equivalent to fundamentally downgrading that factor *sub silentio*. And because that factor was so important, its diminution causes a 180° turn in policy with no Board explanation. This will not do. *See Drug Plastics & Glass Co. v. NLRB*, 44 F.3d 1017, 1022 (D.C.Cir.1995).

\*　　\*　　\*　　\*　　\*　　\*

In the order under review the Board neither properly considered the integration and bargaining-pattern factors that it had previously identified as important in determining the appropriate bargaining units in the basic lumber industry, nor did it explain why those factors no longer deserve the same weight that they have received in the past. Accordingly, we grant the petition for review and deny the application for enforcement.