# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2024     Decided December 13, 2024

No. 23-1237

ACUMEN CAPITAL PARTNERS, LLC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 23-1265

———

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

———

*Lawrence Peikes* argued the cause for petitioner. With him on the briefs was *Jeffrey R. Babbin.*

*Jared H. Odessky*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Jennifer A. Abruzzo*, General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David S. Habenstreit*,

Assistant General Counsel, and *Milakshmi V. Rajapakse*, Supervisory Attorney.

Before: MILLETT and WILKINS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Acumen Capital Partners, LLC, a commercial property management company, petitions for review of the decision of the National Labor Relations Board that it discharged engineer Gregory Zapata because of his protected union activity in violation of Section 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3). Acumen challenges the Board's findings that it had knowledge of Zapata's union activity and was motivated by anti-union animus in discharging him. Because the Board's findings on the timing and the pretextual nature of Acumen's explanation for Zapata's discharge are supported by substantial evidence, the court denies the petition and grants the Board's cross-application for enforcement of its decision and order.

**I.**

Acumen is a real estate management agent for a privately owned office building in Brooklyn, New York. The building houses commercial, non-profit, and government tenants. Acumen employs engineers to maintain the building's boilers and chillers and to complete other maintenance and construction projects.

Jeffrey Rosenblum, co-managing member and owner of Acumen, hired Salvatore Coppola as chief engineer in March 2021. Coppola "wanted to be union, because [he had] been union for the last 25 years." Hr'g. Tr. 202 (Aug. 30, 2022).

When he took the job at Acumen, Coppola told Rosenblum that "[e]verybody's going [u]nion." *Id.* In response, Rosenblum told Coppola "this is a nonunion building." *Id.* Coppola understood from this statement that remaining non-union was one of the conditions of accepting the job. *See id.* at 202-03.

In April 2021, Acumen hired Gregory Zapata to work as one of the building engineers. Previously Zapata had been a member of the International Union of Operating Engineers, Local 30, AFL-CIO ("the Union") for about five years. Early in his employment at Acumen, Zapata asked Coppola why Acumen was not union, and Coppola told him that Rosenblum "didn't want the Union in the building." Hr'g. Tr. 28. Rosenblum had little contact with the engineers and Coppola often served as the conduit between Rosenblum and the engineers, meeting almost daily with Rosenblum and providing the engineers with daily assignments.

Meanwhile in December 2021, during the COVID-19 pandemic, New York City issued a Vaccination Order requiring vaccinations for public and private sector employees within its jurisdiction. On December 6, Rosenblum learned from an announcement by the Mayor's Office that employers would be required to exclude employees from the workplace if they had not received a COVID-19 vaccine by December 27. A Vaccination Order of December 13 instructed employers to exclude unvaccinated employees from the workplace (with exceptions), maintain a record of proofs of vaccination, affirm compliance on a separate form, and conspicuously post that form. On December 27, the day enforcement of the Vaccination Order was to begin, and three weeks after he learned of it, Rosenblum notified Acumen employes of the vaccination mandate by email, attaching the Vaccination Order and noting that those who failed to comply by the December 27 deadline "must be denied entry to their place of work and may

be subject to discipline or termination." Email Rosenblum to Acumen employees (Dec. 27, 2021). Coppola posted the email in the boiler room and by text asked the engineers whether they were vaccinated, noting that Acumen was not enforcing the Vaccination Order at this time. None of the engineers were vaccinated, which Coppola reported to Rosenblum.

Between December 27, 2021, and February 15, 2022, when Zapata was discharged, Rosenblum took no action to exclude unvaccinated employees from the workplace. As of early 2022, Acumen employed three engineers in addition to Coppola: Zapata, Mariano Ramirez, and Gabriel Garcia. Ramirez never provided proof of vaccination and resigned at the end of January to take another job. Garcia, who worked part-time, received a dose of the vaccine on January 13 to comply with a January 15 deadline set by his full-time employer. Coppola had told the engineers that he did not want them to quit over the vaccination mandate, that Rosenblum was not applying pressure, and that he would notify them when Rosenblum was going to apply pressure. When Zapata asked Coppola in early February what would happen if he remained unvaccinated and Rosenblum started enforcing the vaccination mandate, Coppola said he would have to go on furlough and could be replaced. Zapata told Coppola he would decide whether to get vaccinated when Rosenblum began enforcing the mandate.

Around the same time, Acumen's building engineers began in January 2022 to discuss the possibility of unionizing. Garcia called a Union representative on a speaker phone in the boiler room and the representative outlined the process for obtaining a representation election at the building. The Union representative later met with the engineers in the boiler room, explaining that the Union would file a petition for a Board-

conducted election, and the engineers, including Zapata, signed Union authorization cards.

Also in January, Zapata received a message from a job search website about an engineering position at Acumen with higher pay, and he emailed Rosenblum that he would reapply to receive the higher wage rate. The next day Rosenblum called Zapata to his office. Rosenblum told Zapata that the message was generated in error and asked Zapata whether he liked working at Acumen. Zapata told him he did like working at Acumen but thought engineers did not stay because Acumen did not provide full benefits or a retirement plan.

On February 3, 2022, the Union filed a petition with the Board for a representation election. Coppola shared the petition with Rosenblum and posted the petition notice in the boiler room. A few days later, Coppola asked Zapata who had initiated the petition and claimed, as they were then the only two full-time engineers, "it had to either be you or me." Hr'g. Tr. 42. Zapata denied it was him. Within two weeks of the filing of the petition for the Union election, Acumen discharged Zapata.

Rosenblum emailed Zapata on February 14, requesting proof of vaccination. He set no deadline. Zapata responded by email about an hour later that he had been "told that we were not at this time forced to get vaccinated." Hr'g. Tr. 43. Rosenblum responded by email that Acumen was "not forcing" employees to get vaccinated but attempting to comply with the City's mandate. Email Rosenblum to Zapata (Feb. 14, 2022). Rosenblum asked Zapata whether he intended to comply but set no deadline for a response.

On February 15, Zapata told another employee that because Rosenblum was "pressing the issue" he intended to get

vaccinated despite his personal objections. Hr'g. Tr. 44. Zapata made a vaccination appointment at a Walgreens pharmacy for the following day and received an email confirmation. Later that day Rosenblum called Zapata to his office and asked if he had read his emails and received a vaccine dose. When Zapata replied he had not yet been vaccinated, Rosenblum asked if he was aware the City had just discharged thousands of employees for their failure to obtain the vaccine. Rosenblum then told Zapata that he was fired. Zapata protested, but Rosenblum refused to look at Zapata's confirmation of his vaccine appointment for the next day and refused to call Coppola to confirm that he had repeatedly said Acumen was not enforcing the vaccination mandate.

Zapata asked if he could get his job back after receiving the vaccine as scheduled. Rosenblum said he would assess the issue at that time. On February 17, Zapata sent Rosenblum a photo of his February 16 vaccination record and asked to return to work. In later emails that day, Zapata denied he had been the one who contacted the Union. Rosenblum responded on February 18. He stated that he would "assess" the request to return to work, that Coppola had not told Zapata that Acumen was not going to comply with the Vaccination Order, and that Zapata's discharge was due solely to his failure to provide proof of vaccination by the City's December 27 deadline and had nothing to do with the Union, stating to Zapata that he did not "have any idea what your position is on the Union, or whether you were involved with the petition." Email Rosenblum to Zapata (Feb. 18, 2022). Rosenblum never responded to Zapata's other February 18 emails stating he was scheduled to receive his second dose on March 16 and emphasizing Coppola had said Acumen was not enforcing the Vaccination Order. Nor did Rosenblum respond to Zapata's February 23 emails stating that no one told him he would be discharged if he did not get vaccinated and that he did not

contact the Union. Upon receiving no response to his emails, Zapata wrote Rosenblum in his last email, "I don't even want my job back." Email Zapata to Rosenblum (Feb. 23, 2022).

The Union filed a charge against Acumen with the Board on March 7, 2022, for Zapata's unlawful discharge because of his protected union activity in violation of Section 8(a)(1) and (3) of the Act. On March 11, the Board conducted a representation election for a unit of Acumen's full-time and regular part-time engineers, excluding supervisors. Three votes were cast. Acumen challenged Zapata's vote because he was not employed by Acumen as of the election. The Union challenged Coppola's vote as a statutory supervisor who was ineligible to vote. On June 24, the Acting Regional Director consolidated the unlawful discharge and election ballot cases and ordered a hearing.

An administrative law judge ("ALJ") held a hearing August 30-31, 2022, with testimony from Zapata, Garcia, Coppola, and Rosenblum. In a decision of February 17, 2023, the ALJ found that Coppola was a statutory supervisor ineligible to vote and that Acumen unlawfully discharged Zapata. The ALJ credited Zapata's testimony and Garcia's testimony, found Coppola's testimony "generally reliable" except as to his description of his conversation with Zapata about the Union petition as only "shop talk," and discredited Rosenblum's testimony because it often contradicted other more reliable evidence. *Acumen Cap. Partners, LLC*, 372 N.L.R.B. No. 129, at *10 (Aug. 24, 2023). The ALJ ordered Zapata to be reinstated with backpay and to be made whole financially, and remanded the ballot challenges for the Regional Director to revise the tally omitting Coppola's ballot and counting Zapata's ballot.

Acumen filed exceptions to the ALJ's decision and requested oral argument. The Board denied a hearing and upon rejecting Acumen's challenge to the ALJ's credibility determinations, affirmed the ALJ's decision in relevant respects and adopted a standardized order. *See generally id*. Acumen petitions for review. 29 U.S.C. § 160(f).

## II.

Section 7 of the National Labor Relations Act guarantees employees the right to "form, join, or assist labor organizations." 29 U.S.C. § 157. These rights are protected by Section 8(a)(1) and (3) of the Act, which make it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the[se] rights" or "discriminat[e] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." *Id.* § 158(a)(1), (3).

The Supreme Court has long "'recognize[d] without hesitation the primary function and responsibility of the Board' . . . 'of applying the general provisions of the Act to the complexities of industrial life . . . and of "[appraising] carefully the interests of both sides of any labor-management controversy in the diverse circumstances of particular cases" from its special understanding of the "actualities of industrial relations."'" *Ford Motor Co. v. NLRB*, 441 U.S. 488, 496 (1979). The Court acknowledged that "[t]he function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review." *NLRB v. Ins. Agents' Int'l*

*Union, AFL-CIO*, 361 U.S. 477, 499 (1960) (internal quotation marks omitted).

This court's review is limited to whether the Board's decision is "supported by substantial evidence," 29 U.S.C. § 160(e), that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). The court accepts the Board's credibility determinations unless they are "patently insupportable," and it is "more deferential" to findings of discriminatory motive "because most evidence of motive is circumstantial." *Inova Health Sys. v. NLRB*, 795 F.3d 68, 80 (D.C. Cir. 2015) (internal quotation marks omitted).

Where an employer purports to have discharged an employee for reasons unrelated to protected activity, the court applies the test articulated in *Wright Line*, 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981). *See Stern Produce Co. v. NLRB*, 97 F.4th 1, 12 (D.C. Cir. 2024). Under *Wright Line*, the General Counsel first bears "the burden of persuading the Board that an antiunion animus contributed to the employer's decision to discharge an employee." *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 395 (1983). This burden is met by establishing that: (1) the employee engaged in protected activity; (2) the employer had knowledge of the employee's protected union activity; and (3) the employer harbored anti-union animus. *Stern Produce Co.*, 97 F.4th at 12. Once established, at the second step "the burden shifts to the company to show that it would have taken the same action in the absence of the unlawful motive." *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 126 (D.C. Cir. 2001).

Neither party disputes that Zapata engaged in protected union activity. Acumen contends that the Board erred in

finding that the General Counsel established Acumen's knowledge of Zapata's union activity and that Acumen acted with animus in discharging Zapata. For the following reasons, the court concludes there is substantial evidence that Acumen had knowledge of Zapata's union activities and harbored anti-union animus in discharging him.

**A.**

The Board properly found that Acumen had knowledge of Zapata's union activities. First, there was direct evidence that Coppola had knowledge of Zapata's union activity and, as a statutory supervisor during all relevant times, Coppola's knowledge may be imputed to Acumen. In *Clark & Wilkins Industries, Inc. v. NLRB*, 887 F.2d 308, 311-12 (D.C. Cir. 1989), the court enforced the Board's decision and order based on evidence imputed to the company where an employee was "a supervisor within the meaning of § 2(11) of the Act" and had knowledge of union activity. The Board found, and Acumen does not challenge, that Coppola was a statutory supervisor. There was evidence that Coppola and Zapata discussed the Union on at least two occasions, including when Zapata inquired about the Union shortly after beginning work at Acumen, Hr'g. Tr. 104, and later when Coppola accused Zapata of initiating the Union petition, *id.* at 41-42. Further, "Rosenblum's claim that he and Coppola never discussed Zapata's [U]nion support or possible involvement" was discredited by the ALJ, *Acumen*, 372 N.L.R.B. No. 129, at *16-17, and Acumen provides no basis for the court to conclude that the Board acted contrary to its precedent in rejecting Acumen's challenge to the assessment of Rosenblum's testimony, *id.* at *1 n.2.

In addition, during one of Rosenblum and Zapata's few interactions, Zapata expressed dissatisfaction with the wages

and benefits provided by Acumen. Specifically, Zapata stated that the lack of full benefits and a retirement plan was why engineers left the company. This interaction provided evidence from which the Board could reasonably conclude that Rosenblum knew Zapata was dissatisfied with some terms of his employment and willing to express dissatisfaction on behalf of other engineers. That evidence, combined with the imputed knowledge arising from Coppola's status as a supervisor and his role as a conduit between Rosenblum and the engineers, provide substantial evidence for the Board's finding of knowledge of protected activity here.

The Board also relied on the "small plant doctrine" as "one factor tending to establish Acumen's suspicion." *Acumen*, 372 N.L.R.B. No. 129, at *17. The ALJ applied a four-factor test: "the facility is small and open, the work force is small, the employees make no great effort to conceal their union activities, and management personnel are located in the immediate vicinity of the protected activity." *Id.* (quoting *Roemer Indus.,* 367 N.L.R.B. No. 133, at *15 (May 23, 2019), *enforced*, 824 F. App'x 396 (6th Cir. 2020)). Acumen maintains, however, assuming the Acumen workforce is small and Coppola and the engineers discussed the Union on multiple occasions, *id.*, that the Board made no finding Acumen's 575,000 square foot "facility is small and open," Pet'r's Br. 28-32. Even so, the court need not address the applicability of the small plant doctrine because the court has "no substantial doubt" that were the court to remand this case the Board would reach the same result regarding Acumen's knowledge. *Tasty Baking Co.*, 254 F.3d at 129 (internal quotation marks omitted). Application of the "small plant doctrine" disturbs neither the "small firm" context—with only three engineers initially identified as eligible to vote in the Union election—nor the Board's appraisal of Coppola's statutory supervisory position

and Rosenblum's direct discussion of working conditions and employee complaints with Zapata.

**B.**

There also was substantial evidence from which the Board could find that anti-union animus was a motivating factor for Acumen's decision to discharge Zapata. The ALJ relied on Rosenblum's statement to Coppola about the facility being a "non-union building," Hr'g. Tr. 202, Coppola relaying to Zapata that Rosenblum "didn't want [a] union," *id.* at 104, Coppola questioning Zapata shortly after the Union's election petition was filed, as well as the timing and nature of Acumen's action in discharging Zapata. *Acumen*, 372 N.L.R.B. No. 129, at \*17-18. Acumen challenges any reliance on statements by Rosenblum and Coppola on the grounds that Rosenblum's statement was statutorily protected and there was no evidence Coppola played any role in the decision to discharge Zapata. Acumen further maintains its lack of a coordinated campaign against the Union undercuts evidence of anti-union animus.

Section 8(c) provides that "[t]he expressing of any views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). Consequently, "[a]n employer's statement violates the [Act] if, considering the totality of the circumstances, the statement has a reasonable tendency to coerce or to interfere with those rights." *Tasty Baking Co.*, 254 F.3d at 124. And "the content and context of [the employer's] comment must be read in light of 'the economic dependence of the employees on their employers.'" *Cadillac of Naperville, Inc. v. NLRB*, 14

F.4th 703, 716 (D.C. Cir. 2021) (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969)).

Acumen views Rosenblum's statement that Acumen was a "non-union building" to be protected because there was no evidence that it threatened employees. Pet'r's Br. 33-34. True, the court has held that a statement is not protected where there was evidence of "threat of reprisal." *Cadillac of Naperville, Inc.*, 14 F.4th at 714; *see Tasty Baking Co.*, 254 F.3d at 124. Section 8(c), however, also excludes protection of a statement containing a "promise of benefit." 29 U.S.C. § 158(c). The ALJ found that Rosenblum made his statement at the start of Coppola's employment as a term of employment in response to Coppola's interest in "be[ing] union, because [he had] been union for the past 25 years." *Acumen*, 372 N.L.R.B. No. 129, at *17-18 (quoting Hr'g. Tr. 202). Evidence indicated that Coppola understood Rosenblum's statement to mean "that he had to forego any support for or involvement with the union during his employment at Acumen." *Id.* at *18; *see* Hr'g. Tr. 202-03.

The court need not decide whether Rosenblum's statement was protected under Section 8(c). This is so even if the Board erred in imputing Coppola's animus to Acumen in the absence of evidence that Coppola played a role in the decision to discharge Zapata. *See MECO Corp. v. NLRB*, 986 F.2d 1434, 1437 (D.C. Cir. 1993). Under this court's precedent there was substantial evidence without Rosenblum's and Coppola's statements for the Board to conclude that anti-union animus was a motivating factor for Acumen's decision to discharge Zapata. That evidence, in turn, leaves the court with "no substantial doubt" that were the case remanded the Board would reach the same result. *See Tasty Baking Co.*, 254 F.3d at 129; *cf. SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943);

*Sundor Brands, Inc. v. NLRB*, 168 F.3d 515, 519 (D.C. Cir. 1999).

"[T]iming is a telling consideration in determining whether employer action is motivated by anti-union animus." *Reno Hilton Resorts v. NLRB*, 196 F.3d 1275, 1283 (D.C. Cir. 1999); *see Inova Health Sys.*, 795 F.3d at 82. In *Citizens Investment Services Corp.*, 430 F.3d at 1202, the court affirmed the Board's finding of animus where an employee was discharged two weeks after participating in protected union activity. Here too, the Board agreed with the ALJ that "[s]uch a sequence of events supports a conclusion that Zapata's discharge was motivated by antiunion animus." *Acumen*, 372 N.L.R.B. No. 129, at *18. The Union petition was filed on February 3, 2022, and Zapata was discharged on February 15, 2022—within two weeks of the Union's filing for an election.

Evidence of pretext also may "support an inference of unlawful motive." *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1075 (D.C. Cir. 2016). In *Fort Dearborn Co.*, the company's reasons for discharging an employee were found pretextual and the employee's discharge disproportionate where the company had not previously enforced the policy, the company maintained a progressive discipline policy, and other employees received one-day suspensions for violating the same policy. *Id*. The court found that this evidence supported a finding of anti-union animus under *Wright Line*'s first step and established the company's failure to show that it would have taken the same action regardless of anti-union animus under *Wright Line*'s second step. *Id.*

Here, the Board similarly found that Acumen's "proffered explanation [on February 15] for Zapata's discharge—seeking to comply with New York City's order requiring COVID-19 vaccination in the workplace [by December 27]—was

pretextual." *Acumen*, 372 N.L.R.B. No. 129, at *1 n.2. Acumen did not implement the Vaccination Order "in any type of coherent manner prior to Zapata's discharge." *Id.* at *18. Acumen did not comply with the requirements to exclude unvaccinated employees from the workplace, affirm compliance on a separate City-provided form, or post this affirmation in a conspicuous location all by December 27, 2021. Indeed, Acumen did not inform its employees of the Vaccination Order until the December 27 enforcement deadline. And Acumen did not exclude other engineers from the workplace between December 27 and the day Zapata was discharged, despite the fact that Ramirez and Garcia were unvaccinated at times during this period. Moreover, Coppola repeatedly told the engineers that Acumen was not yet enforcing the Vaccination Order and that he would tell them when Rosenblum started applying pressure. Acumen's reliance on *Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469 (D.C. Cir. 2020), is misplaced for there, unlike here, the employer maintained and consistently enforced a written policy that refusal to submit to a physical examination may result in termination of employment. *Id.* at 482.

Acumen's disproportionate response to Zapata's unvaccinated status on February 15 also undermined Acumen's claim that it discharged Zapata for failure to obtain the COVID-19 vaccination. After almost two months of non-enforcement of the Vaccination Order, Acumen abruptly discharged Zapata despite his stated intent and supporting evidence of his intent to come into compliance with the Vaccination Order the next day. To comply with the Vaccination Order, Acumen needed only to exclude Zapata from the workplace for just one day, not take the more extreme step of discharging him. Also telling was Rosenblum's refusal to reinstate Zapata the next day after he obtained the scheduled vaccine, and Rosenblum's insistence instead on "assess[ing]" the issue, without ever offering an

16

additional reason for discharge. Email Rosenblum to Zapata (Feb. 18, 2022). Any force to Acumen's reliance on the absence of a coordinated anti-union effort by the company collapses inasmuch as discharging Zapata accomplished the same result in a three-ballot election.

The timing of Zapata's discharge, the pretextual nature of Acumen's proffered non-discriminatory explanation, and the unexplained disproportionality of the discharge even after the vaccine was promptly obtained, taken together, provide substantial evidence for the Board's finding of animus. That established anti-union animus under the first step of *Wright Line* and that Acumen would not have discharged Zapata regardless of anti-union animus under the second step of the *Wright Line* test.

Accordingly, because the Board's finding that Acumen unlawfully discharged Zapata is supported by substantial evidence on the record considered as a whole, the court denies Acumen's petition for review and grants the Board's cross-application for enforcement of its decision and order.